I think what we will do is we will go on to our second case, and that is Appeal 22-2467, Tabatha Washington and Dante Howard v. City of Chicago. Hello, Mr. Solon. Good morning. Thank you, and may it please the Court. I'm Patrick Solon, and I'm representing the two plaintiffs, Tabatha Washington and Dante Howard, who have claims that they were charged and held in pretrial detention without probable cause on murder charges for Mr. Edmondson, and probable cause is typically a jury question, and there's work for a jury to do in this case. The police had Edmondson's body, and then there was an brain in a pool of blood behind the dumpster in that parking lot, and in their investigation, the three defendant detectives, they gathered actually a consistent body of evidence about the events at the apartment building where the two plaintiffs and the two others had scuffles with Mr. Edmondson, and the picture from six witnesses, three at the apartment scene, and then the three from the parking lot, paints a consistent picture of Tabatha Washington, who's 5'2"-5'5", according to one of the defendants, Edmondson's big and six feet, that she has this little pole, metal pole, and she fends him off, hits the chest, hits the lip, and the two men, White and Plaintiff Howard, they have some hands with Mr. Edmondson, and then he walks off. He's on video along the street, the Chicago video, and then he's in the parking lot, and no sign of any hole in the back of his head. But the video is not good, yeah. Sorry, Your Honor? The video is not. Go ahead. It's just, it's not very clear, is it? Well, it's not very clear, but it doesn't show a hole, it doesn't explain a hole in the head. Well, I think the most you can say is it doesn't show him limping along or something like that as though he's been grievously injured. He seems to be just walking from quite a distance, though, and murky. He's not in any visible distress, and the hole, once he gets it, is a giant pool of blood. They found no traces of blood along the path, in addition to what's on the video. And one of our primary contingents here is that that evidence, the evidence available to the police, including these videos, none of it explains the hole in the back of his skull. So here's what I want you to talk about, because I think it's what this case turns on. This case turns on the difference between the amount of evidence that it takes to constitute probable cause and evidence that would, you know, lead to a conviction. And, you know, in some sense the system worked for these plaintiffs. They were like, but at the probable cause level, we know that Washington and Howard are involved in a physical altercation. She does admit hitting him in certain places. People don't necessarily admit everything they did. She admits, or, you know, we've got Edmondson telling some of his friends that he'd been attacked by the people who lived near him. Maybe that's about the lip. Maybe it's about his head, whatever. But they find a metal pole in Washington's apartment, test positive for his DNA. I'm not saying this is overwhelming evidence. I'm not saying anything like that. I'm just trying to see why isn't that evidence enough to speak by probable cause? Because if it is, this case can't go forward. If it's not, then we have a case. And that was my exact question, because I'd like to add to Judge Wood's question. Aren't most of your challenges more appropriate to establish reasonable doubt rather than to establish no probable cause? No, I don't agree, Your Honor. So the one-inch hole, and the medical examiner at the time, the only one who sees the pole is Detective Alonzo, and he sends it to be tested. And that's the one that they find the DNA on. Right. There's a set, and one of them was it. So it's a basket of evidence that they have, right? That determines whether probable cause is appropriate. And so the nature of the pole, Alonzo, he knows that, but the medical examiner thinks it's a pipe. She doesn't see it until the unlikely she could do it. Now the two detectives, Balademus and Garcia, who are interviewing Washington at 3 a.m., they say correctly, you couldn't have done it, this little woman. You know, you couldn't have done it. So what remains unexplained, and this is critical for probable cause, is that she is connected to the cause of death. And that's just a leap of, you know, probable cause cases distinguish the bare suspicion from the reasonable, and it would have to be an inference here. There's no direct evidence. Can I add and say, and that the cause of death, according to the medical examiner, was consistent with an injury that could have been caused by a pole, by something of that shape and dimension. Putting to one side, who did that to him, the medical examiner says blunt force trauma to the head, the size of the laceration is consistent with the pipe or whatever it is, pole. Right, and there's a distinction of pipe and pole here. Now Alonzo, Detective Alonzo, he knows that this is, and it's described by the witnesses who this light thing, not the blunt instrument that the medical examiner is surmising in the autopsy. And again, that all just remains unexplained and requires this big leap of inference. Even at the probable cause standard, there's just no evidence for it. Well, what about Miss Washington's theory that Howard hit Edmund Stinn in the back of the head twice with the pole? Yes, and so that there's no question that the theory they went forward on, they told the ASA, repeated to the bail judges, one of the detectives repeats it in the grand jury, is that it's Washington with the thing, they wake her up, they say, you couldn't have done it. Now they were right. You couldn't have done it. And it had to be White or Howard, the big men that were there, had to be. And they get her to say it's Howard. They could have gotten her to say it was anybody probably. But she does say it's Howard. In the record. Right, yes, and so the legal point there, of course, is that for probable cause it has been objectively reliable. And a jury can find here that it's objectively unreliable. Like in the Hurt v. Wise case, where it's not consistent with anything else. In Hurt, the prosecution's theory had a body floating upstream in the Ohio River. We don't have anything quite as implausible here as I see it. And what we see is police have a body and they have a lot of conflicting statements and have a hard time figuring out whom to believe about which details, what may be still being concealed. But they know they've got that altercation and they've got Washington saying that Howard hit him in the head. I have trouble seeing why that's not enough. That Howard hit him in the head? Well, they knew that was inconsistent with everything else. I don't know why you say that. Maybe this makes her an accomplice, who knows. But the two of them were involved in this altercation. Maybe, for all we know, in undisclosed detail, Howard grabs the pipe from her and jams it into his head or something. Nobody said that. In fact, people said the opposite, that it was Washington who had it. For a while, but not glued to her fingers. Because she has it, that gets it there into the altercation. Probable cause is just, do we have enough to go forward on? That's why I say I think the essence of this is, is this so far below or maybe a jury question, as you've argued, on probable cause? Or is it something that the facts that we know about are enough to clear that barrier? Our contention is, of course, that it is a jury question. We're not seeking matter of law. The proper inferences from that basket of evidence was the Washington 3 a.m. statement, which she explained was wrong and didn't match anything else. Washington herself being able to do it, none of that explains that big hole in the back of the head. What they should have done here is just continue to investigate. How do we factor in the fact that Howard had lied about his identity to the officers? Washington had lied as well in order to protect the identification of Howard. None of that weighs on the actual being the cause of the murder. And the Curry v. Chicago opinion addresses that. Well, but it certainly would go to probable cause, wouldn't it? Well, the Curry opinion refers to, well, it shows that they have something to hide. But it's not probative of having committed a very specific crime they're being accused of here. It's not the general probable cause. Is it a bad guy? She's accused of causing the hole in the back of the head and nothing more. And the alternate theory that no one pursued, that Howard did it, would be the same thing. If I could ask you, you have mentioned a couple of times the detective's statement to Washington, in essence, we know you couldn't have done it. I look at that and it seems perfectly obvious to me it's a manipulative interrogation technique. Are you saying that that should be treated as, in essence, an evidentiary admission and they should be held to that for the truth of statements they make to a suspect in an investigation? Our contention is that's something the jury should weigh here. The jury should weigh it here. The detectives have not testified that, oh, no, we deliberately lied. We're telling the truth now. We lied then. The Supreme Court says we can lie to suspects. And so that's why we did it. It's objectively a reliable statement by the detectives that she couldn't have done it. I mean, she's just a little woman. And with this poll, it's not the, you know— Who's to say that Mr. Edmondson never fell or was on his knees or anything like that? I mean, the detectives are facing a mystery here. What do you think happened to Mr. Edmondson? Well, that he hit the dumpster. I mean, that's the one. And without the probable cause that it had happened a half-hour before and a half-mile away, and he's showing no signs of it or anything like that. Did anybody test the dumpster for blood? Not that we saw on the record. Yeah. That's the additional investigation that they should have done. And it's their job, right, not mine. The height of the dumpster. And because he only appears in the pool of blood with the big hole in the back of his skull when he's behind that dumpster. There's nothing before that. And it's the basket of evidence. Yes, there's other evidence that they didn't have. But that doesn't supply the probable cause. The question is, you know, the reasonable inference, whether a reasonably prudent officer jumps to that conclusion. And a jury could find here that they didn't have enough to make that very specific conclusion as to either Washington or Howard based solely on that 3 a.m. episode. All right. And beyond that, there is the second element. It's ultimately proximate cause. And after Manuel, we have the Fourth Amendment case surviving. Yes, there were bail hearings. You have transcripts. The grand jury, there's a transcript. None of those finders of probable cause had the full picture. And so it survives that. Thank you. Thank you. Mr. Collins. Good morning. May it please the court. Plaintiff's violent encounter with Mr. Edmondson minutes before he died gave the investigating detectives probable cause to believe that plaintiffs inflicted Mr. Edmondson's fatal head injury. So here's what worries me about the probable cause finding. I mean, it's a very close case, it seems. Certainly, there was the encounter. The evidence from the encounter seems to be exclusively to the front of the face. Now, I realize the head includes both the back of your head and the front of your head. So if you say it's to the head, it means the lips. That's not a lie or anything. But it certainly doesn't indicate anything about the back of the head. So that bothers me. And even more, not that it's the greatest video in the world, but if somebody had the kind of injury that was discovered on the remains of Mr. Edmondson behind the dumpster, I just can't see that that would be the gate in the way that they would walk from the first place to the second place. It just doesn't make any sense. It's maybe not Scott versus Harris level of video, but you don't see. Maybe I'm just making a lay assumption, but a giant hole in the back of your head where you've got skull fragments inside the brain and you're bleeding profusely just doesn't seem to be the same person as the one who was walking down the street captured on the various videos. As to the first part of your question about the blow, the specific blows, it's true that there was not evidence in the form of an admission by Ms. Washington or Mr. Howard. But you've got to get them around to the other side of the head because otherwise somebody could have snuck up on him behind the dumpster when he was out there. I have trouble imagining that he fell into the dumpster like that too, but there are plenty of explanations, and he winds up dead. But in the course of a fight, Mr. Edmondson could have bent over, been on the ground, and sustained the fatal injury at the hands of Plaintiff. Yes, but you see he could have, he might have, he probably did. And you still have the walk afterwards. That's my trouble with that. I'm with you as far as thinking that it was a chaotic situation with Ms. Washington and Mr. Howard fending him off, and apparently he was hyped up on all sorts of things, so he was probably irrational. But if he really sustained the fatal injury at that moment, I don't see how you get him walking in the way that the video captures. Well, of course, when it comes to viewing the video, the detectives do not have to have the medical knowledge to know for certain one way or another what would have been possible after sustaining a potentially fatal head injury. The question is whether their inference is simply reasonable. But beyond that, if there is any question about medical possibilities, the coroner in this case testified that, yes, it would have, in fact, been possible for Mr. Edmondson to have sustained a fatal injury at the location of the fight and then walked the distance he did. I don't think they said at the location of the fight. I think they just said it was consistent with an injury that could be caused by a pole. At the coroner's deposition, she was asked whether it would have been possible for Mr. Edmondson to walk the distance that he did, which I believe was about a half mile before ultimately dying. And she testified that, yes, that would have been possible. So to the extent there's any question about medical possibilities in this case, the evidence supports the detective's inference. Nobody ever checks for blood along the path? It seems like to walk a half a mile without bleeding a drop of blood seems counterintuitive. Well, the witnesses who saw Mr. Edmondson in the parking lot immediately before he passed away saw that he was, in fact, bleeding from the face. From his lip, not from the back of his head. Not from the back of the head. Right, and in that interaction, they didn't have the opportunity to see the back of Mr. Edmondson's head because they were talking to him face-on. But the back of the head is a very vascular area. I mean, you wouldn't miss it if somebody had a giant wound there. Well, it was dark at the time of the interaction, and blood, of course, is dark. So I believe it's altogether possible that that could have been missed in the course of that interaction. Ultimately. Would you say that the criminal liability of Ms. Washington and Mr. Howard is dependent on whether Edmondson received a head injury during their altercation with him? For criminal liability, yes. Because they were, of course, charged with murder and felony murder. So, yes, for them to have been guilty of those charges, Mr. Edmondson would have had to sustain the fatal injury during that fight. In other words, if the fatal head injury was caused by the fall, okay, could they still have faced criminal liability if the injuries from the beating were the reason that he then lost consciousness and fell? I don't know if that would support a first-degree murder charge, Your Honor, and I don't believe that's the theory that the prosecutors move forward with in this case. But presumably, my intuition is that that theory would support some form of criminal liability in this case. But I do want to emphasize here that we're dealing with the probable cause standard, of course, and not proof beyond a reasonable doubt. Of course. And the undisputed facts that the detectives uncovered in the course of their investigation satisfy the probable cause standard. Because there was the fight, there was the fact that Ms. Washington admitted striking Mr. Edmondson several times with a pole, including a blow to the face. The blows were forceful enough that the pole ended up with Mr. Edmondson's DNA on it. So can I just ask you, there's sort of a thread of this in this case. I don't hear you relying on the notion that there was at least probable cause to arrest them for just the battery, you know, for a lesser crime than murder. Are you agreeing that it had to be probable cause for murder? For purposes, well, so the court has not decided whether probable cause for some hypothetical charge defeats a manual claim such as this. We don't think there's a need to decide that issue in this case because there was probable cause to support the murder charges. Also, I note that for purposes of the state law malicious prosecution claims, we know that probable cause for that claim is charge specific. So defendants would have to establish probable cause for murder to defeat the state law malicious prosecution claim. Presumably, a pretrial detention versus bail decision would look very different if it were just battery. I presume so as well. Obviously, we don't have the record establishing that, but that would be my assumption as well. And as an additional fact that supports probable cause is that Ms. Washington several times told detectives that Mr. Howard was the one specifically who struck the fatal blow to the top of Mr. Edmondson's head. Is that the only evidence they had to that effect? It was the only evidence that made Mr. Howard responsible for the blow to Mr. Edmondson's head. And I suppose it was the only admission or evidence offered by either of the plaintiffs that constituted a statement that either of the two plaintiffs specifically struck the fatal blow. So what do we do with this evidence that the detectives told Washington you couldn't have done it? Your Honor, I think you correctly intuited or sensed— Why isn't that a jury question? Well, for a few reasons. One, I think the most reasonable—by far the most reasonable reading of that question is that that was an interview technique to try to get more information. But as you're answering this question, please also address the underlying fact. Apparently—I haven't seen her, but Ms. Washington is a petite person, and for her to—with sufficient force to inflict that harm, I'm not saying it's impossible, but it's less likely. Well, Your Honor, the implement that was used was a metal pole that the coroner opined was consistent with the fatal injury. But to go back to the 3 a.m. questioning of Ms. Washington, even accepting that the detective's statement, we know you could not have done this, accurately and sincerely reflects their belief at the time, probable cause is an objective standard. And so the detective's subjective belief at that time would be irrelevant to the probable cause question. And just on top of that, the detectives could very well have changed their mind in the course of the investigation. The investigation was not over at 3 a.m. It continued after that, and a reasonable detective can change their mind as more evidence comes into the case. But apart from probable cause, there's an independent basis for affirmance, which is that the detectives did not cause the pretrial detention or the prosecution. The prosecutors, rather than the detectives, brought murder charges, the murder charges against plaintiffs. So plaintiff's argument is that the detectives presented the prosecutors, though, with untrue or misleading information. And if that is true, that would break the chain that you're suggesting exists. It would break the chain only if the supposedly falsified or fabricated evidence was material to probable cause. Well, but that's certainly their argument. Sure, yeah. And they relied principally on this felony minutes form, which is a one-page document that the detectives filled out that said that the investigation learned that Ms. Washington struck Mr. Edmondson on and about the head several times with a metal object. And, of course, as I said earlier, hitting you in the nose or the mouth is quite different from creating an inch-and-a-half hole in the back of your skull. Sure, yeah. Certainly those are different specific blows.  And less likely to be fatal. You know, a split lip isn't fun, but it's not likely to be fatal. Of course, of course. But the fact that there was an admitted blow to the face supports an inference that in the course of the same fight there was also a blow to the back of the head. Why does it support that inference? Because it's physically close. It's the same part of the body. Well, but it's— It would be a different case if the only— I mean, the pull didn't go through his forehead. No, it did not. But the evidence would be different if, say, if the only admitted blows were to Mr. Edmondson's kneecaps. I don't see why that's true at all. I mean, you're in the middle of a fight and you're flailing around so you could hit anything. I just—I mean, it sounds like, you know, if you so much as pinch somebody then maybe you murdered them, too, because you were in a fight with them. Well, I submit that the evidence supporting the reasonableness of the detective's conclusion here is much stronger than that because we do have an admitted fight. We have an implement that was consistent with the fatal injury, and that was enough to support the probable cause standard. If I may speak a bit more about causation, it was the prosecutors who brought the murder charges. Prosecutors brought those charges only after conducting their own independent investigation of the case. They presented the charges to judges and a grand jury, all of whom found probable cause. And the detectives did nothing to taint those pretrial proceedings, nor did they engage in any wrongful conduct. Is that an undisputed characterization of this record? I think it is. It is disputed. Yeah, we might pass Mr. Solon. Sure. Well, with respect to the felony minutes form, it did not state any fabricated evidence. This might be a different case, for example, if the form stated that Ms. Washington confessed or admitted to having struck Mr. Edmondson on the top of the head. The form did not say that. And even on the theory that... Well, she recanted. Right. Well, she didn't. At no point during the investigation did she personally admit that she struck Mr. Edmondson with a pole. She only identified Mr. Howard as that person. But even on the theory that the form does state falsified evidence, Manuel still requires that the fabricated evidence be material to probable cause. And the court may ignore the form altogether, take it out of the case entirely, and probable cause nevertheless exists. Briefly, I see my time is almost up. I'd like to address qualified immunity. At a minimum on the Fourth Amendment claims, the defendants are entitled to qualified immunity for a couple of reasons. One is that plaintiffs have identified no case clearly establishing that facts similar to these do not give rise to probable cause, nor do they cite a case showing that investigatory conduct akin to what the detectives engaged in here amounts to a Fourth Amendment violation. So for these reasons, we ask that the district court's judgment be affirmed. Thank you so much, Mr. Collins. Thank you. Mr. Solon, you used up your time, but I will give you three minutes. I didn't realize we used up all 15. I didn't want to interrupt and warn you, but I should have. Well, we were having a good time. Okay. Briefly then, so I don't take more time than needed. Mr. Solon needs a life. Go ahead. On causation. On causation. So there are many disputed facts there. It's not just the false narrative in the clear clothes report. The state's attorneys went to the bail judges and repeated the overheard incriminating statements as a key part of the narrative. And that's just a lie, or so a jury can find when we try the case. And the videos were not used. The poll is at the state lab. And it's the defendant's filtered narrative that gets looked at. Not until the criminal trial does anyone see the real basket of evidence that was available at the time, but known only to the detectives. On the issue with the medical examiner and the state of Edmondson, the three parking lot witnesses are key here because they're not implicated in any way. They see him. They get a good look at him. And Khadija Hill says, 10 minutes, I'm talking to him. They note that he's got what they describe as minor. And he turns around, he walks away. There's no gaping hole. And the medical examiner. You're drawing the inference she would have mentioned a gaping hole in the back of his head had there been one. Yes. And there's no inference that there was one from her not saying it. And the medical examiner says there would be a lot of blood. There was a lot of blood down there behind the dumpster. And there would be a trail. There was no trail. And that once she looks at the poll at the criminal trial, you'd have to drive it perpendicular. It's unlikely, literal, her words, unlikely that you could use this weapon, which she sees for the first time, to have done this. We request reversal and remand for trial. Thank you very much, Mr. Sohn. Thank you very much, Mr. Collins. The case will be taken under advisement.